John G. Van Riper, a resident of Passaic county, died testate on March 18th, 1906. By his last will the residue of *Page 265 
his estate, real and personal, was devised and bequeathed to his executor, Frank Van Cleve, in trust, nevertheless, to pay the income therefrom to the decedent's sister, Getty Anna Christy, for the term of her natural life, and upon her death to pay a certain legacy to a grandniece, and to divide the residue equally between certain grandnieces and a grandnephew.
Under the provisions of P.L. 1894 p. 318, a collateral inheritance tax was charged against the interests in remainder, after deducting the life estate of Getty Anna Christy, and that tax was assessed, in accordance with the provisions of the act, at the sum of $383.35, notice of which was forwarded by the comptroller to the executor, which tax, under P.L. 1903 p. 128, was not payable until the death of Getty Anna Christy, which occurred on January 19th, 1912. Following her death, Mr. Van Cleve made application for a bill, showing the amount of collateral inheritance tax chargeable against the estate, and such a bill was forwarded to him with a statement thereon that if the tax were not paid within thirty days of the death of the life tenant, interest would be added at the rate of ten per cent. per annum from that date until the date of payment. The executor, however, did not pay the bill.
The question is, whether the executor, Mr. Van Cleve, is personally liable to pay this tax or whether he is liable only in his representative capacity as executor, to the extent of assets which came to his hands, which are still liable in the hands of the distributees — remaindermen.
The comptroller insists that personal liability of Mr. Van Cleve is definitely established by sections 1, 6 and 8 of the act of 1894, supra, the pertinent parts of which are as follows:
"Section 1 (subjects the estate to a tax to be paid to the state treasurer), and provides that all administrators,executors and trustees shall be liable for any and all such taxesuntil the same shall have been paid as thereafter directed."
"Section 6 (enacts that the executor, administrator or trustee shall collect the tax, c.), and provides that he shallnot deliver or be compelled to deliver any specific legacy orproperty subject to tax to any person until he shall havecollected the tax thereon." *Page 266 
"Section 8 (enacts that such officer shall pay any tax retained by him within thirty days thereafter to the state treasurer, and that the receipt therefor, signed by the treasurer and countersigned by the comptroller, shall be a proper voucher in the settlement of his accounts), and provides that anyexecutor, administrator or trustee shall not be entitled tocredit in his accounts nor be discharged from liability for suchtax unless he shall produce a receipt so countersigned by thecomptroller, or a copy thereof certified by him."
Counsel for Mr. Van Cleve contends that although our statute provides that the executor shall be liable, in no place does it show that the executor shall be personally liable, and urges that section 1, paragraph 4 of the Transfer Inheritance Tax act of 1909 (P.L. p. 325) shows a contrary intent. That statute enacts that all taxes imposed shall be paid to the state treasurer, and that all administrators, executors, trustees, grantees, donees or vendees shall be personally liable for any or all such taxes until the same have been paid as thereinafter directed, for which an action of debt shall be in the name of the State of New Jersey. The provision thereinafter enacted for the liability of executors is to be found in section 2, which enacts that where property is devised or bequeathed in remainder, that the tax on the life estate shall be immediately levied and assessed, and the tax on the remainder shall be levied and assessed immediately also, but shall not become due or payable until the time when the remaindermen shall become entitled to the actual possession and enjoyment of such property, and if not paid within thirty days, interest at the rate of ten per cent. per annum shall be charged and collected from the time when the tax becomes due and payable; that if the property passing to remaindermen shall be personal property, such remaindermen or the executor or trustee of the estate shall give bond to the State of New Jersey, conditioned to pay said tax and any interest which may fall due thereon, and any executor or trustee who shall assign or deliver to any such remaindermen any personal property liable to tax under the act, unless bond be given as specified, or said tax be paid, shall be personally liable for said tax and all interest thereon, c. *Page 267 
It is true that the act of 1894 does not, in terms, impose personal liability upon the executor, while the act of 1909 does. However, there is nothing apparent on the face of the act of 1909 which indicates a legislative purpose to impose a penalty not contained in the earlier act. Besides, the decision of the New York courts both In re Vanderbilt's Estate and In re Strang,infra, construing the New York act of 1885, from which our act of 1894 was copied, as imposing personal liability upon executors, when, in terms, that act, like our own, did not visit such penalty, would indicate that our legislature, in passing our act of 1909, concluded to write into it a provision arising out of the construction of the New York act by the New York courts.
It is conceded that there is no decision in this state upon the particular question now before the court. But there is no dispute but that our Collateral Inheritance Tax act of 1894 is substantially a copy of that of the State of New York of 1885. And the courts of New York have decided a similar question under their act, as just mentioned above.
In re Vanderbilt's Estate (1890), 10 N.Y. Supp. 239, Surrogate Ransom held that the laws of New York, 1885, chapter 483, section 1, provides that the executor shall be liable for legacy taxes until they have been paid. Section 6 requires the executor to deduct the tax from any money in his possession before paying legacies therewith, and that he shall not be compelled to deliver any specific legacy until he has collected the tax thereon. Section 8 provides that the executor shall not be discharged from liability for the tax until he shall produce the comptroller's receipt therefor, and he held that the executor is personally liable for the payment of the tax, and that he must account therefor on the final settlement and adjustment of the estate.
In re Strang (1907), 102 N.Y. Supp. 1062, was an appeal from the surrogate's court, and Mr. Justice Woodward, speaking for the supreme court (at p. 1063), construing an amendment of 1887 to chapter 483 of the laws of New York, 1885, said that it provides that it shall be the duty of executors, administrators or trustees of an estate within the terms of *Page 268 
the act to report in writing to the treasurer or comptroller of the county within six months of assuming office, so that the provision for holding such administrators, executors or trustees liable for the tax is in the nature of a penalty for not discharging a duty demanded of them by the law. And (at p.1064) that executors, trustees and administrators are presumed, like other people, to know the law, and they have no right to permit the property on which the state has a lien to pass out of their possession or control until that lien has been discharged; that the property comes into their possession subject to this lien; that it is made their duty to call the attention of the public officials to the fact that they have the estate in their possession, and that it is subject to the tax, and until this duty is discharged and the state has been paid this tax as the compensation which it exacts for permitting the devolution of the estate, there is no one who can give a good title to the property, and this much of the law is known to the beneficiaries and to all persons interested, so that there can be no such thing as a vested interest in an estate, no matter how completely it may have been distributed.
In Clay v. Edwards, 84 N.J. Law 221, it was decided that a question arising for the first time in this state out of a provision of an act which was taken from a statute of a sister state and construed by her courts, such construction is entitled to great weight and will be followed, unless it is contrary to some declared legislative policy of this state.
In Hopper v. Edwards, 88 N.J. Law 471, it was decided that where the legislature enacts a provision taken from a statute of another state, in which the language of the act has received a settled construction, it is presumed to have intended that such provision should be understood and applied in accordance with that construction.
In re Christie's Estate, 87 N.J. Eq. 303, Vice-Chancellor Backes observed (at p. 304), that as our Transfer Inheritance Tax act was copied from the statute of New York, it will be presumed that the judicial construction there given to the latter was adopted by our legislation. *Page 269 
This rule is subject to the qualification that where the language of a New Jersey statute is clear and unambiguous, the courts of this state will not go back of the language of the statute and consider the construction placed upon a similar statute by a foreign jurisdiction, especially when there is a difference in the construction in courts of sister states.Torrance v. Edwards, 89 N.J. Law 507, 510. But the language of our statute is not clear and unambiguous, as it would be if it said that the executor shall be liable only to the extent ofassets of the estate in his hands, or that he should bepersonally liable. On the contrary, it only says the executorshall be liable, the ambiguity or uncertainty of meaning being, whether the liability is to be representative, that is, to the extent of assets, or personal, that is, extending to his own individual estate.
As the New York Inheritance Tax act of 1885 was construed in the surrogate's court (1890) and in the supreme court (1907), as imposing a personal liability upon the executor, instead of a representative one, to the extent of assets for the payment for such tax, and as our act of 1894 does not, in clear and unambiguous language, provide a representative, instead of a personal, liability, I regard it as my duty to adopt their construction and apply it to our act and hold that an executor is personally liable, provided, of course, that he had assets sufficient to pay and discharge the tax; and especially so, as such liability is apparent upon a rational construction of our act, irrespective of the decisions of the courts of New York.
Counsel for the defendant asserts that this action is brought and prosecuted under P.L. 1894 p. 318 § 16, which provides that the citation shall cite the persons interested in the property liable to the tax to appear before the ordinary, c., and this he contends in conjunction with section 2 of the same act, which provides that the tax prescribed by it on the remainder shall be immediately due and payable to the treasurer of the state, together with interest thereon, and shall be and remain a lien on said property until the same is paid, and that as the remaindermen have not been brought in with *Page 270 
the executor, the proceeding is defective for want of proper parties.
It is to be observed that the statute makes the estate, and also the executor, liable to the tax. If the beneficiaries were brought in as parties, because interested as parties, the state could, nevertheless, elect to make the money out of the executor. Therefore, it is not perceived how the executor is injured by the non-joinder of parties who would also be liable if the state chose so to make them. Of course, in a case where an executor himself had nothing the state could make the tax money out of the estate passing to the beneficiaries. But where the executor is a man of substance, as in this case, and the state chooses to pursue him for the tax for which he is personally liable, he cannot escape responsibility or stall the proceedings by asserting that others are liable if the state chose to pursue them. The doctrine is that an objection for want of proper parties, taken at the hearing of a bill in equity, will not prevail unless such parties are necessary to the final determination of the case. Van Doren v. Robinson, 16 N.J. Eq. 256.
It cannot be plausibly suggested that the remaindermen, beneficiaries in this estate, are proper parties whose presence before the court is necessary to the final determination of the case between the state and the executor. Commenting upon parties, Vice-Chancellor Pitney in Fletcher v. Newark Tel. Co., 55 N.J. Eq. 47,
quoted the definition of another judge (at p. 52): "The general doctrine in relation to parties in equity is often stated to be that all persons interested in the subject-matter of the suit should be made plaintiffs or defendants. This statement is too broad. It would be more accurate to say, persons interested in the object of the suit must be made parties — that is, persons who are parties to the interest involved in the issue, and who must necessarily be affected by the decree." Judged by this test the remaindermen are not necessary parties to this suit. They are not interested in the object to be attained, namely the visitation upon the executor of his personal liability under the act. They are interested, to be sure, in having the state recover and collect from the executor the amount of the tax, *Page 271 
they being liable only in the event that it could not be so collected, and then only to the extent of their legacies.
In re Cassidy's Will, 80 N.J. Eq. 163, Chancellor Pitney held that the orphans court partakes of the powers of the court of chancery and prerogative jurisdiction. And I held, In reMerrill, 88 N.J. Eq. 261 (at p. 281) that while the prerogative court is neither a court of law nor equity, its proceedings, nevertheless, are more generally assimilated to those obtaining in the court of chancery than in the common law courts.
It seems to me, and I so hold, that the rule in equity applying to the joinder or non-joinder of parties, obtains in the prerogative court. Therefore, upon this score the beneficiaries in remainder, although they would be proper parties, are not necessary parties, and their non-joinder does not operate to defeat or abate the comptroller's proceeding in this cause.
The result reached is that the comptroller is entitled to a decree against the defendant for the amount of the tax, with interest and costs.
This cause was submitted on March 16th last, since which time Mr. Van Cleve, the defendant, has departed this life. In this situation, and to avoid the necessity of revivor and substitution of parties on a record, the law very wisely provides that the decree to be rendered on this hearing may be entered nunc protunc as of the time of the submission of the cause. Dan.Ch. Pl. Pr. (6th Am. ed.) [*]1017; 21 C.J. 652.
Where a party dies after his cause is finally submitted for decision, the court has the power to enter the decree as of the term when, in the lifetime of the party, the cause, after argument, was finally submitted for decision. Mitchell v.Overman, 103 U.S. 62; 26 L.Ed. 369. Where a defendant dies after trial and argument, a decree may be entered nunc pro tunc.Molineaux v. Raynolds, 55 N.J. Eq. 187. The same doctrine is held in Burnham v. Dalling, 16 N.J. Eq. 310; Benson v.Woolverton, 16 N.J. Eq. 110 (bottom of p. 111); Clark v.Van Cleef, 75 N.J. Eq. 152, 157. *Page 272 
The petition of the comptroller, the answer of the defendant, and other papers filed in this cause, are entitled "Before the Ordinary." They should have been entitled "New Jersey Prerogative Court." The Collateral Inheritance Tax act of 1894 (P.L. 318
§ 15) provides that the ordinary, and the orphans court in certain cases, shall have jurisdiction to hear and determine all questions in relation to the tax arising under the provisions of that act. And the Transfer Inheritance Tax act of 1909 (P.L.p. 325) provides, in section 18, that any person dissatisfied with an appraisement or assessment made by the comptroller may appeal therefrom to the ordinary; section 20 enacts that the ordinary shall have jurisdiction to hear and determine all questions in relation to any tax levied under the provisions of that act; section 21 enacts that if it shall appear to the comptroller that any tax which has accrued under the act has not been paid, he shall report such fact in writing to the register of the prerogative court, and said register shall issue a citation to the persons interested in the property liable to tax to appear before the ordinary and show cause why such tax should not be paid; service of citation and subsequent proceedings to conform to the practice prevailing in the prerogative court, and section 22 provides that whenever the comptroller shall have reason to believe that any tax is due and unpaid he shall notify the attorney-general in writing, and the attorney-general, if he have probable cause to believe the tax to be due and unpaid, shall prosecute the proceedings before the ordinary provided for in section 21. Proceedings by the state under sections 21 and 22 are the converse of the proceedings under section 18 by the party interested in the property assessed.
In re Dittman's Executors, 87 N.J. Eq. 297, Vice-Chancellor Lewis held that an appeal to the ordinary under P.L. 1909
§ 18, is an appeal to the prerogative court because the ordinary is the judge of that court and the proceedings are in that court; that it seemed that appeal to the ordinary under the act made him a statutory tribunal, and that an appeal from a decree of the prerogative court in a case under *Page 273 
that act is reviewable by certiorari in the supreme court and not by appeal to the court of errors and appeals. And afterwards the latter court, speaking by Chief-Justice Gummere, In reRoebling's Estate, 91 N.J. Eq. 72 (at p. 75), held that that case, involving as it did a matter of taxation, was reviewable bycertiorari only, notwithstanding the fact that the legislative agency (prerogative court) created for the purpose of primary review of the action of the tax assessor was a court of record whose orders and decrees, accordingly, are reviewable only by an appeal to that court — court of errors and appeals. Therefore, on the authority both of this court and the court of errors and appeals, the proceeding before me is one in the prerogative court, although that court acts in the given case as a legislative agent, and the judge thereof is a statutory magistrate.
Let a decree be entered in the prerogative court for the comptroller against the defendant, for the amount of the tax with interest and costs nunc pro tunc as of the date when this cause was argued and submitted. The other papers will be amended by similarly entitling them in this court.