91 N.J. Super. 447 (1966)
221 A.2d 35
REGO INDUSTRIES, INC., PLAINTIFF-APPELLANT,
v.
AMERICAN MODERN METALS CORP. AND AIRLITE ALUMINUM CORP., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1966.
Decided June 14, 1966.
*449 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. Max L.. Rosenstein argued the cause for appellant (Mr. Harold M. Cohen, on the brief).
Mr. Lawrence B. Raff argued the cause for respondents (Messrs. Raff, Sherman & Scheider, attorneys; Mr. Terence Corcoran, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff filed a Chancery Division complaint in four counts, respectively seeking:
*450 (1) a declaratory judgment with respect to its status under a contract entered into with defendant American Modern Metals Corp. (Amco) on February 28, 1963, whereby it agreed to supply plaintiff with aluminum-sheathed television cable to be manufactured by it, the agreement to continue for ten years;
(2) a judgment rescinding that agreement, extinguishing Amco's rights thereunder, and granting plaintiff leave to recover all damages sustained by reason of Amco's alleged breach;
(3) a judgment for damages allegedly sustained by reason of Amco's breach of the agreement; and
(4) a judgment for replevin of certain equipment allegedly loaned by plaintiff to Amco.
Plaintiff joined Airlite Aluminum Corp. as defendant in the belief that Amco had merged with Airlite and the corporate entity was being operated as a division of Airlite, both corporations being controlled by the same individuals.
The first count of the complaint alleges that Amco did not perform in accordance with the contract and, indeed, breached it, the result being that the agreement was allegedly completely superseded by a new working arrangement, confirmed in part by a letter addressed to plaintiff by Amco dated September 15, 1964. Plaintiff also alleged that in furtherance of the expansion of its business and its commercial needs, and in order to prevent commercial frustration in the proper operation of its business, it arranged to set up its own plant for the purpose of doing the work theretofore performed by Amco. To this end it organized a wholly-owned subsidiary, which is in operation and supplies plaintiff with a portion of its aluminum-sheathed cable needs.
Defendants moved for an order dismissing the entire complaint for failure to comply with R.R. 4:8-1, which requires that the complaint contain a statement of facts on which the claim is based and showing that the pleader is entitled to relief, and R.R. 4:8-5(a), which directs that each averment of a pleading should be simple, concise and direct. In the alternative, they moved (1) to dismiss the first count on the ground that a petition for a declaratory judgment would not lie on the facts stated in the complaint and the affidavit annexed thereto; (2) to dismiss the second count because it did *451 not set out a ground on which the Chancery Division could order rescission, and (3) to transfer the third and fourth counts to the Law Division on the ground that neither plaintiff's primary right nor the principal relief it sought was equitable.
The matter came on for hearing after the filing of affidavits and resulted in an order (later given the effect of a final judgment): (1) dismissing the first count for a declaratory judgment; (2) allowing plaintiff to amend the second, third and fourth counts to include the factual allegations necessitated by that dismissal; (3) retaining jurisdiction of the second count for rescission and directing defendants to answer or otherwise plead thereto in the Chancery Division; (4) transferring the third and fourth counts to the Law Division and directing defendants to answer or otherwise plead thereto, and finally, (5) denying a stay pending appeal. Plaintiff thereupon appealed from the dismissal of the first count and the transfer of the third and fourth counts to the Law Division.
Before proceeding to a consideration of the appeal, we note that defendants filed an answer and counterclaim. Their first separate defense alleged that plaintiff had failed to plead facts establishing grounds upon which the trial court could grant rescission under the second count, in that plaintiff did not offer to restore defendants to the status quo existing at the time of the execution of the February 28, 1963 contract. The second separate defense alleged that plaintiff had breached the contract by constructing its own plant and depriving defendants of the benefit of an exclusive right to supply the sheathed cable, and was therefore estopped from denying the validity of the agreement. The counterclaim, in four counts, demanded (1) judgment for $22,897.60 due from plaintiff on a book account; (2) a judgment for damages because plaintiff had breached the agreement between the parties, leaving defendants with an unusable plant and a complete loss of business; (3) judgment requiring plaintiff (a) to make a full disclosure of the operation of its business *452 with respect to aluminum sheathing and processed cable; (b) to account for all profits derived from the operation of its business with respect to these items since February 28, 1963; (c) to pay defendants all monies derived from its use of their secret process, alleged to have been improperly acquired and used by it, and (d) to compensate defendants for all losses sustained by reason of the termination of the agreement, including loss of profits, and to restrain plaintiff from any further use of the secret process; and (4) judgment for punitive damages because of plaintiff's willfully wrong action in setting up its own plant and equipment in order to deprive defendants of the benefits of the contract, and because it had pirated their secret process in accordance with a preconceived plan on its part.
Plaintiff's first point on appeal is that where the plain purpose of the complaint seeking declaratory judgment was to secure repose in a controversy and to accelerate a determination of rights and status where prospective litigation was causing unrest, it was error for the trial judge to dismiss the first count. In dismissing that count the trial judge stated that the controversy had already reached fruition. The Declaratory Judgments Act, he said, was designed to avert litigation by resolving impending disputes and giving repose to a party who did not know which way to turn. However, where the controversy had progressed to a point where relief could be obtained in an ordinary law suit  under the facts present, in an action properly to be brought in the Law Division  the trial judge ruled that declaratory relief should not be granted. He further ruled that such relief was not available where it appeared that its purpose was to "bag" a law suit, i.e., to obtain a judicial ruling that plaintiff possessed a good defense to an imminent action at law.
We find that the dismissal of the first count was correct on the facts present in this case. The purpose of a declaratory judgment proceeding is to provide a means by which rights, obligations and status may be adjudicated in cases involving a controversy that has not yet reached the stage at *453 which either party may seek a coercive remedy. Such proceeding is intended to serve as an instrument of preventive justice, to relieve litigants of the common law rule that no declaration of right may be judicially adjudged until that right has been violated, and to permit adjudication of rights or status without the necessity of a prior breach. Stated in another way, there is ordinarily no reason to invoke the provisions of the Declaratory Judgments Act where another adequate remedy is available.
Plaintiff does not claim that there is presently any question regarding its future rights or duties under the February 28, 1963 agreement or the alleged new arrangement of September 15, 1964. On the contrary, plaintiff claims that defendants have breached both agreements, thereby justifying the setting up of its own plant. The only uncertainty which plaintiff claims to be subjected to consists of defendants' threats of a law suit. Defendants, on the other hand, charge that plaintiff breached the initial contract. We are therefore beyond the point of a justiciable controversy; the parties have reached a stage where rights have been breached. Relief under the Declaratory Judgments Act is accordingly unavailable to plaintiff; actually, all it has left is a claim for damages. It has asserted that claim in clear and positive terms in the third count of its complaint.
We agree with the Chancery Division judge that plaintiff's recourse to the Declaratory Judgments Act was in effect an attempt to have the court adjudicate in advance the validity of its possible defense to defendants' imminent law suit. Judicial discretion should not be extended to granting declaratory relief where a plaintiff's purpose is so manifest. Utility Blade & Razor Co. v. Donovan, 33 N.J. Super. 566, 572 (App. Div. 1955), referring to Ewing Twp. v. Trenton, 137 N.J. Eq. 109, 110 (Ch. 1949), where Vice-Chancellor Jayne expressed doubt that the Declaratory Judgments Act was intended to be utilized defensively in equity, "to bag in advance an imminent and impending law suit." And see Borchard on Declaratory Judgments (2d ed. 1941), p. 303.
*454 Although we recognize that the Declaratory Judgments Act should be liberally construed and administered to carry out its purpose, New Jersey Bankers Ass'n v. Van Riper, 1 N.J. 193, 198 (1948), we conclude that under the circumstances of this case the trial judge acted well within his equitable discretion when he found that the relationship between the parties had progressed to a point where granting declaratory relief would not serve the purpose intended by that legislation.
Plaintiff's second main argument is that the trial judge, having retained jurisdiction in the Chancery Division over the second count of the complaint (rescission), should also have done so with respect to the third and fourth counts instead of transferring them to the Law Division. That is so  assuming the second count stated a cause of action. One of the fundamental objectives of our judicial system under our State Constitution (1947) and the rules of court is to avoid the delays and wasteful expense of a multiplicity of litigation resulting from the splitting up of a controversy. See Thatcher v. Jerry O'Mahony, Inc., 39 N.J. Super. 330, 335 (1956), where we pointed out that the prime aim of our practice is the just and expeditious determination in a single action, wherever possible, of the ultimate merits of an entire controversy between litigants, citing such cases as Ajamian v. Schlanger, 14 N.J. 483, 485 (1954), and N.J. Highway Authority v. Renner, 18 N.J. 485, 492 (1955). The rule still obtains that where equity has rightfully assumed jurisdiction over a cause for any purpose, it may ordinarily retain the cause for all purposes and proceed to a final determination of the entire controversy, establishing purely legal rights and granting legal remedies. Sattelberger v. Telep, 14 N.J. 353, 368 (1954).
What we have just said would, in ordinary course, compel a reversal with regard to the transfer of the third and fourth counts to the Law Division. There has been no cross-appeal addressed to the Chancery Division's retention of the second count. However, since it will be necessary to remand the matter *455 for trial, we desire to give the trial judge the benefit of our thinking relative to plaintiff's demand for rescission.
The second count incorporated by reference all of the allegations of the first count for declaratory judgment, wherein plaintiff set out at length and in great detail the negotiations leading up to the February 28, 1963 agreement, the delays and difficulties that attended defendant Amco's getting into production, the changes in the arrangements between the two parties, plaintiff's setting up of its own plant, etc., including its claim of Amco's breach. The second paragraph of the count alleged that Amco "never genuinely intended to perform said agreement of February 28, 1963 on its part to be performed and breached said agreement as hereinabove alleged." The third paragraph recited that plaintiff therefore elected to rescind the agreement and to seek damages. Claiming to be without an adequate remedy at law, it demanded judgment rescinding the agreement in its entirety, extinguishing all of Amco's claimed rights thereunder, and seeking leave to recover damages by reason of Amco's breach.
As heretofore noted, the trial judge denied defendants' motion to dismiss the rescission count, retained jurisdiction, and permitted plaintiff to amend the count to include the factual allegations necessitated by the dismissal of the declaratory judgment count. Plaintiff filed such an amendment, repeating all the allegations which had appeared in the first count of the original complaint and concluding, as before, with the claim that defendant Amco had never genuinely intended to perform the agreement of February 28, 1963, and breached it. Plaintiff demanded judgment of rescission.
Defendants' answer to the amended complaint generally denied its allegations and by way of separate defenses again stated that the allegations of the amended second count failed to set forth the specific grounds upon which the trial court could rescind the agreement and, further, that plaintiff had made no offer or attempt to restore defendants to as good a position as they enjoyed before entering into the agreement with plaintiff. Defendants then moved to dismiss the amended *456 complaint because it did not comply with the mandatory requirements of R.R. 4:8-1 et seq., relating to pleadings. The motion was denied.
We have examined the amended second count and doubt that it alleges such facts as would provide a ground for rescission. At oral argument plaintiff claimed that the amended second count made out a case for rescission based on fraud. Fraud, like mutual mistake, is a valid ground for such relief. However, a pleading averring fraud must set out the particulars of the wrong, in as great detail as practicable. R.R. 4:9-1. Carefully considered, the amended second count apparently fails to do so. We have nothing more than the conclusionary statement that Amco never genuinely intended to perform the agreement  this in the face of the unalterable fact, established by plaintiff's own allegations, that the parties adhered to the agreement despite disappointment by reason of the delay in producing the aluminum-sheathed cable because of technical difficulties, and in spite of the fact that the parties lived under their arrangements for a period of some two years during which defendants produced and delivered the required cable to plaintiff. It would appear that there was, at best, a partial frustration of purpose as distinguished from fraud. As we read the record, there is nothing in plaintiff's allegations which even as much as suggests that defendants never intended to produce and deliver the required cable. Indeed, they undertook to do so, and if plaintiff was disappointed with the results, it was not because Amco did not try to live up to the agreement, as best it could. It can hardly be said that an agreement under which the parties lived for some two years was one that was undermined by a fraudulent intent on Amco's part at its very inception.
We question whether the Chancery Division should have retained jurisdiction of the count for rescission in light of the very facts set out in the amended complaint. We remand in order to provide the Chancery Division judge with a further opportunity to examine into the validity of that count. If, upon such reexamination, he is convinced that the count is *457 prima facie valid, he should enter judgment retaining that count as well as the third and fourth counts. On the other hand, if he concludes that rescission is not properly pleaded, he should enter judgment dismissing the second count and transferring the third and fourth counts to the Law Division for further proceedings.